UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

TERENCE SPEIGHTS,

                                        Plaintiff,

            -against-

THE CITY OF NEW YORK, a municipal corporation;
Detective Charles Stewart, (Shield No. 2387);
Detective Madelyn Ciprian-Dobles, (Shield No. 3004);
Sergeant Robe Fernandez, Detective Issac Shannon,
Detective Robert Simms, Lieutenant Drivick, and
Captain Thomas Pascale,

                                        Defendants.
-------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

11 CV ★  JAN 31 2012  ★

BROOKLYN OFFICE

**COMPLAINT**

**12 - 0443**

**PLAINTIFF DEMANDS
A TRIAL BY JURY
SUMMONS ISSUED
ECF Case**

GERSHON, J.

POHORELSKY, M.J.

Plaintiff, Terence Speights, by his attorney, the Law Office of Glenn A. Wolther,

as and for his complaint alleges as follows, upon information and belief:

### Jurisdiction & Venue

1.      Jurisdiction is based on 28 U.S.C. §§1331, 1343(a)(3), and 1343(a)(4).

2.      Venue is properly lodged in this Judicial District pursuant to 28 U.S.C.

        §1391(b)(1), this being the District in which the majority of events and omissions

        giving rise to the claims occurred.

### Parties

3.      At all times material hereinafter mentioned, Plaintiff Terence Speights ("Plaintiff"

        or "Speights") was and is a resident of the State of New York.

1

4.  At all times material hereinafter mentioned, Defendant the City of New York ("NYC"), was and is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.  NYC acts by and through its agencies, employees, and agents including but not limited to the New York City Police Department ("NYPD") and its employees. The NYPD is a non-suable subdivision of NYC and its employees are employees of NYC.  The NYPD and NYC receive federal funds.

5.  At all times material hereinafter mentioned, Defendant Charles Stewart, (Shield No. 2387:), ("Stewart") was assigned to the Brooklyn South Narcotics Bureau, and / or the 76th Precinct of the NYPD and is a police Detective employed, trained, retained, and supervised, by NYC and the NYPD at the Brooklyn South Narcotics Bureau, and / or the 76th Precinct in Brooklyn.  Plaintiff brings this action against Stewart in his personal, Supervisory, and official capacities.

6.  At all times material hereinafter mentioned, Defendant Detective Madelyn Ciprian-Dobles, (Shield No. 3004); ("Ciprian") was assigned to the Brooklyn South Narcotics Bureau, and / or the 76th Precinct of the NYPD and is a police Detective, of a Supervisory level,  employed, trained, retained, and herself supervised, by NYC and the NYPD at the Brooklyn South Narcotics Bureau, and / or the 76th Precinct in Brooklyn.  Plaintiff brings this action against Dobbs in her personal, Supervisory, and official capacities.

2

7.   At all times material hereinafter mentioned, Defendant Issac Shannon ("Shannon") was assigned to the Brooklyn South Narcotics Bureau, and / or the 76th Precinct of the NYPD and is a police Detective employed, trained, retained, and himself supervised, by NYC and the NYPD at the Brooklyn South Narcotics Bureau, and / or the 76th Precinct in Brooklyn.  Plaintiff brings this action against Shannon in his personal, Supervisory, and official capacities.

8.   At all times material hereinafter mentioned, Defendant Detective Robert Simms ("Simms"), was assigned to the Brooklyn South Narcotics Bureau, and / or the 76th Precinct of the NYPD and is a police Detective employed, trained, retained, and himself supervised, by NYC and the NYPD at the Brooklyn South Narcotics Bureau, and / or the 76th Precinct in Brooklyn.  Plaintiff brings this action against Shannon in his personal, and official capacities.

9.   At all times material hereinafter mentioned, Defendant Robe Fernandez ("Fernandez"), was assigned to the Brooklyn South Narcotics Bureau, and / or the 76th Precinct of the NYPD and is police Sergeant, of a Supervisory level, employed, trained, retained, and himself supervised, by NYC and the NYPD at the Brooklyn South Narcotics Bureau, and / or the 76th Precinct in Brooklyn. Fernandez was the direct supervisor of defendants Stewart, Ciprian, Shannon, and Simms. Plaintiff brings this action against Fernandez in his personal, supervisory, and official capacities.

10.     At all times material hereinafter mentioned, Defendant "John" Drivick
        ("Drivick"), whos first name is currently unknown, was assigned to the Brooklyn
        South Narcotics Bureau, and / or the 76th Precinct of the NYPD and is police
        Sergeant, of a Supervisory level, employed, trained, retained, and himself
        supervised, by NYC and the NYPD at the Brooklyn South Narcotics Bureau, and
        / or the 76th Precinct in Brooklyn.  Drivick was the supervisor of defendants
        Stewart, Ciprian, Shannon, Simms, and Fernandez. Plaintiff brings this action
        against Drivick in his personal, supervisory, and official capacities.

11.     At all times material hereinafter mentioned, Defendant Thomas Pascale
        ("Pascale"), was assigned to the Brooklyn South Narcotics Bureau, and / or the
        76th Precinct of the NYPD and is police Captain, of a Supervisory level,
        employed, trained, retained, and himself supervised, by NYC and the NYPD at
        the Brooklyn South Narcotics Bureau, and / or the 76th Precinct in Brooklyn.
        Pascale was the supervisor of defendants Stewart, Ciprian, Shannon, Simms,
        Fernandez, and Drivick. Plaintiff brings this action against Pascale in his personal,
        supervisory, and official capacities.

12.     Defendants Stewart, Ciprian, Shannon, Simms, Fernandez, Drivick, and Pascale
        are hereinafter collectively referred to as the "NYPD Defendants."

13.     At all times material hereinafter, the NYPD Defendants were acting under color
        of law and pursuant to their authority as police officers and supervisory officers

4

and employees of NYC and the NYPD.  All of the NYPD Defendants actions described herein are within the scope of their employment.  The NYPD Defendants are State Actors.

14.     Under the Charter of the City of New York, NYC is responsible for the conduct of municipal agencies such as NYPD, and as such is the legal entity responsible for implementing any legal or equitable relief ordered by the Court in this action.

## **Facts**

15.     Plaintiff Terence Speights is an African American adult male. At all times material hereinafter mentioned he was a resident of a New York City Housing Authority ("NYCHA") apartment located at 116 Busch St. Brooklyn, NY 11231.

16.     On the morning of September 22, 2008, Speights was visiting his grandmother, Elizabeth Clark, and was lawfully inside his her apartment, #3A,  which is located at 811 Hicks Street, In Kings County, New York. (the "Unit").

17.     The Unit is located within a building owned and operated by the NYCHA.

18.     The Unit is located in a completely different building from Plaintiff's residence.

19.     Defendant members of the NYPD Defendants unlawfully entered the Unit.

20.    At that time no NYPD Defendant had neither a search warrant to enter the Unit or
       an arrest warrant to enter the Unit to apprehend an individual believed to be
       located within the Unit.

21.    Upon the NYPD Defendants, whom were present, entry into the Unit, Plaintiff
       was close to the front door that the NYPD members entered through.

22.    Plaintiff was placed in handcuffs by defendant members of the NYPD.

23.    Plaintiff was improperly searched and seized.

24.    Plaintiff did not consent to the search of his person.

25.    Based upon the NYPD members present and their actions Plaintiff did not, nor
       was he in fact, free to leave.

26.    Upon information and belief, Cyprian, Stewart, Shannon, and Fernandez were
       present at various times while Plaintiff was seized and held, before being
       removing him from the Unit.

27.    The NYPD Defendants present became were aware while Plaintiff was still
       within, via identification that was improperly seized from a search of Plaintiff's

6

clothing, that he resided at another location.

28.    While the NYPD Defendants present improperly search the Unit, they recovered
       controlled substances from a closed rooms that were separate, and not
       immediately accusable, from the entranceway of the Unit where Plaintiff was
       seized.

29.    At the time of the recovery of the contraband from the closed rooms the NYPD
       Defendants present were aware that Plaintiff resided at a different location.

30.    Nevertheless, Defendants Cyprian, Stewart, Shannon, and Fernadez conspired and
       aid and abated one another, in ordered to justify their initial improper entry into
       the Unit and, upon information and belief, to *inter alia*, fulfill arrest quotas, and
       an NYPD policy regarding NYCHA apartment complexes charged Plaintiff, along
       with the Unit's tenant, and others, with possession of unlawful substances that
       were recovered within the Unit.

31.    At no point had Plaintiff violated any Federal, State, or local law, nor was there
       any reasonable basis for the NYPD Defendants present to believe that Plaintiff
       had committed a crime or violation.

32.    At no point did the NYPD Defendants present have sufficient legal cause to stop,
       detain, search, seize, or arrest Plaintiff, nor was there any reasonable basis for the

7

NYPD Defendants to believe such cause existed.

33. Ciprianm Stewart, Shannon, and Fernandez conspired and aided abet one another in obtaining a warrant for the search of the Unit.

34. The warrant was not issued or executed until hours after Plaintiff was in police custody.

35. Upon information and belief the NYPD Defendants' actions were taken without authority, legal justification, reasonable suspicion, or probable cause. The NYPD Defendants had no arrest warrant for Plaintiff. At no time did probable cause exist to justify the NYPD Defendants' seizure and detention of Speight's.

36. Plaintiff was removed from the Unit and transported to the 76th. precinct station house.

37. Following the NYPD Defendant who were present seizure of Speight's he remained continually confined while he was unlawfully transported, via a police vehicle, to the 76th. police precinct station house, next to Central Booking and then the Kings County Criminal Court, in Brooklyn, NY.

38. The criminal prosecution against Speights was commenced with a sworn Complaint signed by Ciprian in which she falsely claimed to have observed

8

Speights, *inter alia*, claimed to have lived within the unit, and also falsely testified and created paper work, regarding the particulars of her own, Stewart and Shannon's entry and search of the Unit.

39.     The NYPD defendants conspired and aided and abated one another in commencing false and abusive criminal process and proceedings against Plaintiff for improper and illegal ends.

40.     Based upon Cyprian sworn complaint, Speights was arraigned and charged, with with, inter alia, violating various provisions New York Penal Law Article 220, Criminal Possession of a narcotic substance with intent to sell, under docket number 2008KN070839.

41.     Ciprian's allegations in the Criminal Complaint and other criminal court paper work were materially false, and Ciprian knew them to be false at the time they were made.

42.     The other NYPD Defendants also knew that the Criminal Complaint and other criminal court paper work were materially false at the time Ciprian made them.

43.     Upon information and belief, Plaintiff was unjustly and unlawfully subjected to abusive criminal process in order to justify the NYPD Defendants' improper seizure and because of Plaintiff's race so to deprive him of his Constitutional

rights.

44.     Upon information and belief, the NYPD Defendants agreed to fabricate false charges and false paperwork and aid and abet one another in doing so.

45.     At no time did the NYPD Defendants have sufficient cause to commence criminal process against Plaintiff, or cause such process to be commenced, nor was there any basis for the NYPD Defendants to reasonably believe that such cause existed.

46.     Upon information and belief, no police officer or other member of the NYPD intervened or stopped the NYPD Defendants from issuing the false and misleading paperwork regarding Plaintiff or the false testimony before the Grand Jury.

47.     Upon information and belief, neither Fernandez, Drivick, or Pascale or any other supervisory NYPD member or officer prevented or remedied the unlawful seizure, arrest, arrant application, warrant, criminal court paper work, criminal complaint, Grand Jury testimony, and subsequent hearing testimony.

48.     Upon information and belief, Fernandez, Drives, and Pascale ratified the s unlawful seizure, arrest, arrant application, warrant, criminal court paper work, criminal complaint, Grand Jury testimony, and subsequent hearing testimony tacitly or explicitly.

49.     At no point did the NYPD Defendants seek to recant their materially false
        statements.

50.     The NYPD Defendants actions were willful, intentional, and malicious.

51.     Speight was held and continually confined from the time of his arrangement at the
        Kings County Criminal Court on or about September 24, 2008 Speights.

52.     At arraignment he was relapsed from custody, however his liberty remained
        restrained as he was ordered, under there of arrest, to reappear at his next
        scheduled court date.

53.     During the pendency of the Speight's prosecution the  NYPD Defendants
        continued their improper actions by further their fabricated story which falsely
        tied Plaintiff to the improperly obtained contraband from the Unit .

54.      By the false and misleading actions of the NYPD Defendants, an indictment,
        2008/9587 was obtained.

55.     Stewart lied to and mislead the Grand Jury by testifying, in conformity with the
        paperwork and fabricated story he and the other NYPD defendants had already
        concocted, that it was while executing an emergency search warrant with the Unit

11

60.    Plaintiff's diminished liberty continued, until the the case against was dismissed
        and favorably terminated on or about February 24, 2010.

61.    Plaintiff could not have become reasonably aware of the specific nature of the
        continuous and ongoing policy of discrimination and unconstitutional actions in
        violation of his rights until particular facts were disclosed during Plaintiff's
        criminal case. Further, the continuous and ongoing policy of discrimination and
        unconstitutional actions were not completed, relative to Plaintiff, until the time
        that his criminal case favorably terminated.

### FIRST CAUSE OF ACTION
### FEDERAL CLAIMS
### AGAINST ALL INDIVIDUAL DEFENDANTS

62.    Plaintiff repeats and realizes each and every allegation contained in
        paragraphs 1 through 61 as if set forth fully herein.

63.    The NYPD Defendants violated, conspired to violate, and aided and abetted in the
        violation of Plaintiff's clearly established and well-settled federally
        protected rights.

64.    The acts and conduct described herein deprived the Plaintiff of his rights under
        the Fourth, Fifth, and Fourteenth Amendments to the United States
        Constitution, and 42 U.S.C. §§1981, 1983, 2000(d), and 3789(d) in violation of
        and 42 U.S.C. §§1981, 1983, 2000(d), 3789d(c):

13

that they entered the apartment and observed Plaintiff.

56.     Stewart lied to and mislead the Grand Jury by testifying, in conformity with the paperwork and fabricated story he and the other NYPD Defendants had already concocted, that Plaintiff was present within the Unit during the execution of an emergency search warrant.

57.     Stewart lied to and mislead the Grand Jury by testifying, in conformity with the paperwork and fabricated story he and the other NYPD Defendants had already concocted, that Plaintiff was within the Unit, specifically standing in front of a room where drugs were recovered during the execution of an emergency search warrant.

58.     Stewart lied to and mislead the Grand Jury by testifying, in conformity with the paperwork and fabricated story he and the other NYPD Defendants had already concocted, that Plaintiff stated it was his room within the unit, in which drugs were recovered during the execution of an emergency search warrant.

59.     Ciprian lied to and mislead the Grand Jury by testifying, in conformity with the paperwork and fabricated story she and the other NYPD Defendants had already concocted, that it was while executing an emergency search warrant with the Unit that they entered the apartment and recovered drugs.

(a)     To be free from malicious prosecution;

(d)     To be free from abuse of process;

(c)     Not to be deprived of Liberty and Property without Due Process of Law;

(d)     To be free from the lodging of false charges against him by police officers;

(e)     Freedom from having police officers fabricate evidence against him;

(f)     To Equal Protection under the law, and not to be deprived of any
        Right or Privileges of a citizen; and

(g)     To be free from discrimination based upon Race;

65.     The acts and conduct of the NYPD Defendants described above was intentional,
        wanton, malicious and oppressive.

66.     As a direct and proximate result of the NYPD Defendants' acts described herein,
        the NYPD Defendants have caused Plaintiff to suffer deprivation of his liberty,
        mental and emotional distress, suffering, humiliation, embarrassment, economic
        and other damages.

**SECOND CAUSE OF ACTION
FOURTH and FOURTEENTH AMENDMENT
MODELL CLAIM AGAINST NYC**

14

67.    Plaintiff repeats and realleges, each and every allegation contained in
       paragraphs 1 through 66 as if fully set forth fully herein.

68.    At all times herein mentioned the NYC, its agents, employees and servants,
       including but not limited to the NYPD Defendants, acted under color of the
       statutes, customs, ordinances and usage of the City and State of New York.

69.    Upon information and belief, the acts and conduct complained of herein resulted
       in part from a de facto policy or custom, or practice of the Defendant NYC,
       implemented by police officers of the NYC and/or condoned by the NYPD, to
       stop, seize, charge, and prosecute civilians without legally sufficient justification,
       in a racially discriminatory manner, within NYCHA property, and based within
       false or fabricated testimony / evidence in which the NYC has acquiesce in and
       ratify widespread unlawful practices by NYPD members with the NYCHA
       against residents and their family and guests. Further, Further the acts and conduct
       complained of herein resulted in part from a de facto policy or custom of the
       Defendant NYC, implemented by the NYPD and/or the police officers of the
       NYC, to allow police officers to work without proper levels of supervision. NYC
       was responsible for ensuring that reasonable levels of supervision were in place
       within the NYPD generally and the Brooklyn South Narcotics Bureau, and / or the
       76th Precinct  precinct specifically.

70.    Upon information and belief, NYC, its officers, officials, agents, employees, and servants, knew or should have known that there was inadequate supervision within the Brooklyn South Narcotics Bureau, and / or the 76th Precinct precinct on and prior to September 22, 2008, and that individuals were routinely improperly seized and charged by NYPD members on vertical and other patrol within NYCHA buildings. Further evidence of NYC policy regarding NYCHA property, race, arrest quotas, and fabricated evidence / testimony fabrication is set forth in a *Floyd v. City of New York*, 08 Civ. 1034 (SAS)(S.D.N.Y.); *Davis v. City of New York*, 10 Civ. 0689 (SAS)(S.D.N.Y.)), *Schoolcraft v. City of New York*, 10 Civ 6005 (RWS)(S.D.N.Y.), *Colon v. City of New York*, 09 Civ. 0008 (JBW)(E.D.N.Y.). Despite the prior notice of inadequate supervision, NYC took no steps to ensure that reasonable levels of supervision were in place within the Brooklyn South Narcotics Bureau, and / or the 76th Precinct in order to reasonably provide that NYPD officers engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers to stop, detain, search and arrest members of the public, including and specifically, the Plaintiff herein.

71.    NYC and its officers, officials, agents, employees, and servants, officers, were deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of Plaintiffs' rights in particular. These practices are ongoing and continuing.

16

72.    All Defendants acted under pretense and color of state law and in their
       official capacities and within the scope of their employment.

73.    Said acts by the Defendants were without authority in law, and were in
       abuse of their powers. Said Defendants acted willfully, knowingly, and
       with specific intent to deprive Plaintiff of his constitutional rights.

74.    As a result of the failure of NYC officials to properly recruit, train, discipline
       and supervise its police officers, including the NYPD Defendants NYC has tacitly
       authorized, ratified, and been deliberately indifferent to, the acts and conduct
       complained of herein.

75.    As a direct and proximate result of the Defendants' acts described herein,
       Defendants have caused Plaintiff to suffer deprivation of his liberty, mental and
       emotional distress, suffering, humiliation, embarrassment, economic and other
       damages.

## THIRD CAUSE OF ACTION
## FEDERAL CLAIMS
## AGAINST SUPERVISORY DEFENDANTS

76.    Plaintiff repeats and realizes each and every allegation contained in
       paragraphs 1 through 75 as if repeated fully herein.

77.   Upon information and belief, Fernandez, Drives, and Pascale failed to supervise, monitor, train and discipline the non supervisory NYPD Defendants.

78.   Upon information and belief, Pascale and Drives and failed to supervise, monitor, train and discipline the lower ranking supervisory NYPD Defendant Fernandez.

79.   Upon information and belief, Pascale failed to supervise, monitor, train and discipline the lower ranking supervisory NYPD Defendant Drives.

80.   Upon information and belief, Fernandez, Drives, and Pascale have shirked their duty to ensure that officers under their control, and accountable to them, do not engage in civil rights violations and unlawful conduct.

81.   Upon information and belief, the acts and conduct of the Fernandez, Drives, and Pascale was intentional, wanton, malicious and oppressive.

82.   As a direct and proximate result of Fernandez, Drives, and Pascale acts described above, they have caused Plaintiff to suffer deprivation of his liberty, mental and emotional distress, humiliation, embarrassment, economic, and other damages.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Cave P. 38 Plaintiff demands a trial by jury, on all

18

issues so triable, in this action.

**WHEREFORE**, Plaintiff Terence Speights demands judgment and prays for the following relief, jointly and severally, against the individual NYPD Defendants:

    (a) Full and fair compensatory and punitive damages in an amount to be determined by a Jury;

    (b) A declaration pursuant to 28 U.S.C. §§2201-2202 that the Plaintiff's rights were violated by their unlawful conduct;

    (c) Statutory Attorneys Fees pursuant to, *inter alia*, 42 U.S.C. §1988, Expert Fees, the costs and disbursements of this action; and

    (d) Such other and further relief as appears just and proper.

And the following relief against the Municipal Defendant NYC:

    (a) Full and fair compensatory damages in an amount to be determined by a Jury;

    (b) A declaration pursuant to 28 U.S.C. §§2201-2202 that the Plaintiff's rights were violated by its unlawful conduct;

    (c) Statutory Attorneys Fees pursuant to, *inter alia*, 42 U.S.C. §1988, and expert Fees, the costs and disbursements of this action; and

    (d) Such other and further relief as appears just and proper.

Dated: New York, New York
      January 14, 2012

BY: _____
      Glenn A. Wolther
      *Attorney At Law*
      305 Broadway, Suite 1102
      New York, New York 10007
      Tel: (212) 964-2120
      Fax: (212) 964-0763
      *Attorney for Plaintiff*-Terence Speights